# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BROOM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | No. 4:11CV1263 NCC |
| | ) | |
| RONDA J. PASH,[1] | ) | |
| | ) | |
| Respondent, | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition by Robert Broom for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] After reviewing the case, the Court has determined that petitioner is not entitled to relief. As a result, the petition will be dismissed.

## Background

Petitioner was charged with first-degree robbery, in violation of Mo. Rev. Stat. § 569.020, for forcibly stealing two purses belonging to a woman at gunpoint. Resp't Ex. B at 9 (Legal File, Indictment). The indictment further charged

---

[1] Petitioner was incarcerated in the Northeast Correctional Center at the time the petition was filed. He is now incarcerated in the Western Missouri Correctional Center, where Ronda J. Pash is Warden. Ronda J. Pash will therefore be substituted as the proper respondent. See 28 U.S.C. § 2254, Rule 2(a).

[2] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this proceeding. 28 U.S.C. § 636(c).

petitioner as a prior offender as defined by Mo. Rev. Stat. § 558.016. Id. A jury found petitioner to be guilty. Resp't Ex. B at 45 (Legal File, Verdict). And the trial court sentenced petitioner as a persistent offender to ten years' imprisonment. Resp't Ex. B at 53 (Legal File, Judgment).

Petitioner raised two points on direct appeal: (1) that the trial court erred in not reinstating venirepersons Mark Dixson, an African-American male, and Arthur Wasserman, a Caucasian male, who the state peremptorily struck, because the strikes violated Batson v. Kentucky, 475 U.S. 79 (1986), and (2) that the trial court erred in sentencing petitioner as a persistent offender because the indictment charged him only as a prior offender. Resp't Ex. D at 11-12 (Appellant's Br.).

The Missouri Court of Appeals affirmed. Missouri v. Broom, 281 S.W.3d 353 (Mo. Ct. App. 2009). The appellate court found no merit to petitioner's Batson claim, and it found that petitioner was not prejudiced by the trial court's finding that petitioner was a persistent offender. Id. at 357-59. However, the appellate court modified the judgment to reflect that petitioner was indeed a prior, not a persistent, offender.

Petitioner filed a timely motion for postconviction relief. Resp't Ex. H at 4-13 (Legal File, Pet'r Mot.). The court appointed counsel, who filed an amended motion, alleging ineffective assistance of counsel. Resp't Ex. H at 17-47 (Am.

Mot.). The motion court denied the motion after holding an evidentiary hearing. Resp't Ex. H at 90-114 (Mot. Court's Findings of Fact, Conclusions of Law, and J.).

Petitioner raised two points on appeal: (1) that counsel was ineffective for failing to present the testimony of Anthony Long and Raphael Simms, who would have testified that petitioner injured his foot the day before the robbery thereby providing petitioner with an alibi, and (2) that counsel was ineffective for failing to cross-examine the victim about the weapon used during the robbery. Resp't Ex. I at 14-15 (Appellant's Br.).

The Missouri Court of Appeals affirmed. Resp't Ex. K (Per Curiam Order and Mem.). The appellate court applied the proper analysis under Strickland v. Washington, 466 U.S. 668 (1984), to petitioner's claims. Trial counsel had sent her investigator to find Long and Simms, and the investigator was unable to find them after several tries. Id. at 9. In addition, petitioner did not establish that counsel was ineffective for failing to cross-examine the victim about the weapon. Id. at 10.

Petitioner timely filed the instant petition on July 12, 2011, which is the date he placed it in the institutional mail system.

## Grounds for Relief

1. The trial court erred in not reinstating venirepersons Dixon or Wasserman after petitioner's Batson challenge; and trial counsel was ineffective for failing to respond to the prosecutor's "post hoc" justification on the Batson challenge.

2. Trial counsel was ineffective for failing to cross-examine the victim with prior deposition testimony that the weapon displayed was a starter pistol.

3. Trial counsel was ineffective for failing to interview witnesses who would have supported his alibi.

## Procedural Default

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. Id. "[T]he existence of cause for a procedural default must ordinarily turn on whether

the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

**Standard**

1. Merits Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly

established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

    2.    Ineffective Assistance of Counsel Standard

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111 (2009). First, a petitioner must overcome the high bar of Strickland v. Washington, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, ––– U.S. –––, 131 S. Ct. 770, 788 (2011). Both the Strickland standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is

whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

**Discussion**

1.   Ground One

In ground one, petitioner argues that the trial court erred in not reinstating venirepersons Dixon or Wasserman after petitioner's Batson challenge, and he further argues that trial counsel was ineffective for failing to respond to the prosecutor's "post-hoc" justification on the Batson challenge. Respondent counters that petitioner's trial error claim fails because the prosecutor's reasons for striking Dixon and Wasserman were race-neutral. Respondent also argues that petitioner's ineffective assistance claim is procedurally barred because petitioner failed to raise it on appeal from the denial of postconviction relief.

   a.   Trial Court Error – Juror Wasserman

The Missouri Court of Appeals stated the background of this claim as follows:

> During voir dire, the state responded to defendant's Batson challenge by stating that it had reasons for striking [Wasserman], but that it was not required to disclose them because it believed that Batson did not apply to [Wasserman], in that "he is not a member of a minority." The trial court denied defendant's Batson challenge to [Wasserman] without requiring the state to come forward with race-neutral reasons for the strike.

> However, during the sentencing hearing, when the court took up defendant's new trial motion, the state did give an explanation for its strike of [Wasserman]:
>
>> [Prosecution]: [Defense counsel] has challenged juror 459, [Wasserman], who I did not give a Batson reason for striking him because he was of the Caucasian race and I did not think that was required. The Court did not require me to make one. She has cited a U.S. Supreme Court case which I have not had a chance to read, but I would, for the record, indicate that I had made notes after the voir dire, and my notes indicate that I was prepared to say that he had served on a grand jury and there were several cases that he thought there was insufficient evidence to support the charges, but he concluded majority rules. And I think he would have been an inappropriate juror to be on this case.
>
> The court asked defense counsel if she wished to respond, and she declined. The court then denied the motion.

State v. Broom, 281 S.W.3d at 356.

The appellate court then noted that the "particular race of a defendant or a venireperson is irrelevant to the question whether a peremptory strike is racially motivated and therefore violates the Equal Protection Clause." Id. The court stated that normally the trial court should have immediately held a Batson hearing, but it found that that error was cured when it considered the issue on petitioner's motion for a new trial. Id. The court found that Wasserman's comments that the state had not produced sufficient evidence to support indictments on several cases he heard as a grand juror was a facially race-neutral reason for a peremptory strike.

-8-

Id. at 357.  And it found that petitioner had failed to demonstrate that the state's reasons were pretext.  Therefore, the appellate court affirmed.

In Batson, the Supreme Court set forth a three-step analysis for peremptory challenges under the Equal Protection Clause of the Fourteenth Amendment. "First, the opponent of the peremptory challenge must establish a prima facie showing that the challenge is discriminatory." United States v. Wolk, 337 F.3d 997, 1007 (8th Cir. 2003).  Second, "[t]he proponent of the peremptory challenge must then articulate a race-neutral explanation for the challenge." Id.  Third, "[i]f a race-neutral explanation is offered, the challenger must show that the explanation is a pretext for discrimination." Id.

The Missouri Court of Appeals followed the correct procedure for determining whether petitioner showed that the state's explanation was pretext. The record demonstrates that he did not.  Therefore, the decision of the state court is not contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to relief on this claim.

      b.    Ineffective Assistance – Juror Wasserman

Plaintiff argues that trial counsel was ineffective for failing to respond to the prosecutor's "post-hoc" justification on the Batson challenge.  Petitioner does not specify what argument counsel should have made in response to the prosecutor's

statements or how he was prejudiced by the exclusion of Wasserman from the jury. Respondent contends that this claim is procedurally defaulted because petitioner did not raise it on his appeal from the denial of postconviction relief.

Respondent is correct. This claim was not properly presented to the state courts in that it was not raised on appeal. Petitioner has not offered any grounds for finding cause and prejudice for the default. As a result, petitioner is not entitled to relief on this ground.

Moreover, petitioner must present more than conclusory allegations of ineffective assistance of counsel to state a claim for habeas relief. Petitioner has failed to present any viable argument showing that the prosecutor's reason for striking Wasserman was pretext, and he has not shown that he was prejudiced by the strike. As a result, his claim fails on the merits as well.

    c. Trial Court Error – Juror Dixson

The Missouri Court of Appeals stated the background of this claim as follows:

> The voir dire transcript discloses that when defense counsel asked [Dixson] whether he would be able to presume that defendant was innocent, [Dixson] answered, "Yes, he's innocent." Defendant's Batson challenge to the strike of [Dixson], the state's response, and the trial court's ruling proceeded as follows:
>
> > MS. LLEWELLYN: Juror number 46, Judge, [Dixson]. I believe this strike is a violation of his right to be a juror

and of Robert Broom's right as a defendant, and [Dixson] is a black male, on the basis of race.

* * *

THE COURT: Your reasons?

MR. WARREN: My reason is that he was constantly muttering throughout the defendant's voir dire. And rather loudly shouted he is innocent basically with an emphasis of exclamation mark behind it, when the defense was asking for their views on the defendant's guilt or innocence. And for that reason, I struck him. He was the most outspoken person, claiming the defendant's innocence.

THE COURT: Ms. Llewellyn?

MS. LLEWELLYN: Your Honor, I'd say that reason is pretextual. His demeanor could be interpreted another way. Plain old frustration because I kept asking the same questions of the panel and by the time I got to his section, it was the third group. I believe that reason is pretextual. And at one point when I was asking the questions, when I started, juror [Flynn] was actually pretty loud about responding also and [Flynn] is a Caucasian male. I believe the reasons are pretextual.

THE COURT: The Court finds that the reasons stated by the State for the strike of [Dixson], juror number 46, are not pretextual or racially motivated. Therefore, the defense motion with regard to Batson will be overruled and the strike shall stand. . . .

State v. Broom, 281 S.W.3d at 357.

The appellate court found that Dixson and Flynn were not similarly situated because Flynn did not express a belief favorable to the defense as Dixson did when he "rather loudly shouted he is innocent." Id. And the appellate court deferred to the trial court's findings regarding Dixson's and Flynn's demeanors, noting that it was in the best position to determine whether the prosecutor accurately described them. Id. at 358.

For purposes of federal habeas review of state-court criminal proceedings, a state court's factual findings are presumed to be correct. Sumner v. Mata, 449 U.S. 539, 547 (1981). The trial court was in the best position to determine whether the prosecutor's representation of Dixson's and Flynn's demeanors was accurate, and the prosecutor offered a race-neutral explanation for striking Flynn, that is, Flynn's excessive muttering and loud exclamation of petitioner's innocence. The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. As a result, petitioner is not entitled to relief on this claim.

    d.    Ineffective Assistance – Juror Dixson

Petitioner did not raise this claim on appeal from the denial of postconviction relief. As a result, this claim is procedurally defaulted, and petitioner is not entitled to relief.

As with his previous claim, petitioner offers nothing but conclusory allegations of ineffective assistance of trial counsel. Petitioner does not allege how counsel should have acted differently or how he was prejudiced. As a result, this claim fails on the merits as well.

2. Ground Two

In ground two, petitioner argues that trial counsel was ineffective for failing to cross-examine the victim with prior deposition testimony that the weapon displayed was a starter pistol. Petitioner says the evidence would have shown that the gun was neither a deadly weapon nor a dangerous instrument. Petitioner contends that if the jury heard this testimony it would have acquitted him or convicted him of second degree robbery. Respondent argues that petitioner failed to produce the deposition transcript or the victim's testimony regarding the weapon being a starter pistol in the state courts, and therefore, petitioner failed to demonstrate that he is entitled to relief on this claim.

The Missouri Court of Appeals applied the Strickland analysis to this claim. It found that "the extent of cross-examination and the manner in which it is conducted are matters of trial strategy best left to the judgment of trial counsel." Resp't Ex. K at 10 (Per Curiam Order and Mem.). The court further found that petitioner failed to overcome the presumption that counsel's strategy was

reasonable. Id. The appellate court then found that petitioner failed to show prejudice. Id. At the evidentiary hearing before the motion court, petitioner did not introduce the victim's deposition, and he did not call the victim as witness. Therefore, there was no evidence, outside of petitioner's testimony, that the victim had described the weapon as a starter pistol. Id. The appellate court deferred to the motion court's credibility findings, regarding whether petitioner's testimony was believable or not. Id. Therefore, the Missouri Court of Appeals affirmed.

The Supreme Court has held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The victim's deposition testimony was never presented to the state courts. And as is stated above, the state court's factual findings are presumed to be correct. Petitioner has failed to demonstrate that the Missouri Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. As a result, he is not entitled to relief on ground two.

    3.    Ground Three

In ground three, petitioner argues that trial counsel was ineffective for failing to interview Anthony Long and Raphael Simms, who would have supported his alibi that his foot was injured and he could not have committed the robbery

because he was incapacitated. Respondent contends that Long and Simms were not available as witnesses and that their testimony failed to provide an alibi.

The Missouri Court of Appeals stated the background of this claim as follows:

> Anthony Long and Rafael Simms, friends and coworkers, allegedly would have testified that [petitioner] did not have an "afro" haircut one day prior to the robbery. . . .
>
> An evidentiary hearing was granted and held. Mr. Long testified that he had known [petitioner] for thirty-five years. Mr. Long stated that [petitioner] wore his hair "crew cut" style and not an "afro." In addition, Mr. Long testified that [petitioner] dropped a 200-300 pound dresser on his foot the day before the robbery and that he began walking with a noticeable limp. Mr. Long testified that he lived at 5816 Pershing at the time of [petitioner's] trial, half a block from [petitioner's] home, and that he was willing to testify regarding [petitioner's] hair style and foot injury. He stated that he had the same phone number, a land line, for years, and that [petitioner] had that number. Long said that six months after the robbery, [petitioner] asked him to be a witness, but never discussed the case again with him. Likewise, Mr. Simms testified that he had known [petitioner] since childhood and that he never wore his hair long. He also stated that he was at the same job as [petitioner] when he injured his foot. Mr. Simms did not see [petitioner] drop the dresser, but he did hear [petitioner] yell after it fell on his foot. Mr. Simms stated that he had not been contacted to testify at trial until the current hearing. Mr. Simms moved from his home on Waterman—where he lived for "thirty something years"—to Pine Lawn shortly before the robbery. He said that he would have been willing to testify at [petitioner's] trial about his foot injury and short hair style. Simms testified that a friend told him about the evidentiary hearing, and that from the date of the robbery until a week before the evidentiary hearing, he did not know that he could have been a witness, stating, "Ain't nobody could find me."

. . .

[Petitioner's] trial counsel ("Trial Counsel") also testified. She stated that she assigned her investigator to speak with Mrs. Broom (petitioner's mother), Mr. Long, Mr. Simms, David Morris, and Cedrick Smith. Trial Counsel said that the investigator could not find any of the people, and was able to talk only to Mrs. Broom. She testified that she decided not to use Mrs. Broom as a witness after talking to her investigator about his conversation with her. . . . [Trial counsel] stated that regarding the foot injury, the late Mr. Smith, Mr. Long, and Mr. Simms, would have made valuable witnesses, but she did not find them. Trial Counsel testified that she had been given an address by [petitioner], but received no other information regarding the witnesses. She said that her investigator's notes showed that he tried to find telephone contact information for potential witnesses, but that some of the numbers were disconnected, and that he could not find any numbers that corresponded with the addresses. She stated that her investigator went to the Pershing address provided by [petitioner] on three occasions, and on the last, the postal carrier told him that the names that the investigator had listed were not listed and did not sound familiar. According to Trial Counsel, her investigator said that he spoke to Mrs. Broom, "and she said she didn't really know any of the witnesses." She stated that [petitioner] never gave her an address for Simms.

. . .

[Petitioner] also testified. He claimed that he gave Trial Counsel "the numbers, and contact addresses to all the witnesses." . . . [Petitioner] stated that if he had known that Trial Counsel could not find his witnesses that he "would have brung them to her." He said that he would have just called them or gone to their homes. . . .

The motion court made findings of fact and conclusions of law. Its findings summarized the evidence presented at the evidentiary hearing. It concluded that [petitioner's] contention that Trial Counsel was ineffective for failing to call Long as a witness was without merit and denied it. The motion court found that Long would not have provided [petitioner] with a viable defense because the mere fact that

> Long did not work with [petitioner] on the day of the robbery one day after [petitioner] injured his foot did not establish that [petitioner] could not have committed the robbery. It also concluded that the booking photo of [petitioner] refuted the claim and testimony that he never wore his hair in other than a near bald cut. It also found that Trial Counsel credibly testified that she had contact information for Long, but that her investigator was unable to find him.
>
> The motion court also concluded that [petitioner's] claim that Trial Counsel was ineffective for failing to call Simms was also without merit, and denied it. Simms's testimony at the evidentiary hearing that [petitioner] always wore his hair cut as short as possible, nearly bald, was refuted by [petitioner's] booking photo. It also found that Trial Counsel asked her investigator to contact Simms, but that he could not locate Simms. The motion court further found that Simms testified that [petitioner] did not ask him to be a witness, and that he never offered to be one. It found that the testimony that Simms gave at the evidentiary hearing "would not have provided a defense."

Resp't Ex. K at 2-6.

> In affirming, the Missouri Court of Appeals stated:
>
> The motion court found Trial Counsel to be credible that she had witness contact information, that she directed her investigator to contact witnesses, including Long and Simms, but that her investigator could not find either of these witnesses despite several trips to the address provided by [petitioner] and a discussion with the postal carrier for that neighborhood. The investigator talked with Mrs. Broom, who provided no useful information for Trial Counsel. Trial Counsel was unable to locate Long and Simms through reasonable investigation. There are real world constraints of time and resources, and accordingly defense counsel has a "heavy measure of deference in deciding what witnesses and evidence to pursue.

Id. at 9.

State court findings of fact are entitled to a presumption of correctness. Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. Owens v. Dormire, 198 F.3d 679, 682 (8th Cir. 1999). Petitioner has failed to meet this burden. He failed to present clear and convincing evidence that he informed trial counsel of the addresses where Long and Simms could be found, and he failed to demonstrate that counsel did not conduct a reasonable investigation into his potential witnesses. The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. As a result, petitioner is not entitled to relief on ground three.

## Conclusion

For these reasons, petitioner is not entitled to federal habeas relief. Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall substitute Ronda J. Pash as respondent in this matter.

**IT IS FURTHER ORDERED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and **DISMISSED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 9th day of September 2014.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE